STATE v. JIM BARBER.

(Filed 16 October, 1929.)

**Homicide H c—Instruction in this case held prejudicial error.**

Upon the trial for a homicide, where the evidence tends to show that another struck the blow resulting in death, and that the defendant struck a blow which was not mortal, and the inference is not permissible from the evidence that they acted in concert, or that the two blows were struck at the same time, an instruction that is capable of the interpretation that if the other person struck the mortal blow the defendant would be guilty, is error prejudicial to the defendant entitling him to a new trial on appeal.

APPEAL by defendant from *Daniels, J.,* at August Term, 1929, of LENOIR. New trial.

James Barber and Rochelle Turnage were indicted for the murder of Simon Gray, the State not requesting a verdict for murder in the first degree. At the conclusion of the evidence the action was dismissed as to Turnage, but prosecuted as to Barber, against whom there was a verdict for murder in the second degree.

Evidence for the State tended to establish the following circumstances: About 8 o'clock on the night of 3 August, 1929, the defendant in company with James Williams, Rochelle Turnage and Leslie Gray went to a tobacco barn where the deceased was curing tobacco. The deceased was lying on a bunk under the shelter. Turnage, who seemed to be drunk, shook him and the two began to fight each other. Each cursed the other, and the deceased got a bottle and hit Turnage in the forehead. Leslie Gray then ran away. While the deceased was bent over Turnage, who was on his knees, the defendant came up, stood behind the deceased, struck him on the head with a truck round about three feet long and about the size of a man's wrist or arm. The deceased fell trembling. The defendant refused to assist Bruce Croom in taking the deceased home, saying that he "could not handle him" and "could not mess with him." After saying he had "knocked hell' out of him, the defendant remarked: "Let the damn son of a bitch stay there and they won't know who did it."

There was evidence tending to show that Randolph Davis inflicted the mortal blow; that he had a grudge or ill feeling against the deceased, had made threats against him, and on Sunday afternoon preceding the killing at night, had got some shells and threatened his life. It was in evidence that after the homicide Davis admitted that he had struck the deceased; said he ought to have been killed, and asked Leslie Gray not to say who had hit the deceased.

The defendant testified: He served sixty days on the roads, four or five years ago; that he raised tobacco on the place where this barn

stood; that he and Simon were together that morning curing tobacco; that he told Simon he would stay that night; that there was no feeling between them; that he came to the barn about 8 o'clock and told Simon that he would go get supper and come back; that the furnace could not be seen from where the witness Williams was sitting in the car; that the end of the shelter was boarded in; that when the car drove up to the tobacco barn that night Turnage got out and went to the barn; that he, Barber, put a piece of wood in the furnace; that Turnage shook Simon, and that Simon cursed him; that Simon stooped to pick up something; that Turnage pushed him away, and that they ran into each other again; that Randolph Davis came up and struck him with a truck round. The defendant said that Simon had not done anything to him, and that they were on good terms; that Randolph Davis hit Simon twice and that Turnage then jumped up; that he told them to help him take him up, and they would not do it; that Randolph said that he hit him; that Turnage and Simon cursed each other.

There was evidence that the defendant's character was good.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*
*Shaw & Jones for defendant.*

ADAMS, J. After the homicide had been committed Dr. Lee examined the body of the deceased. He found two wounds on the head: a laceration from three and a half to five inches in length in a line from the right eye back toward the ear, the laceration extending to the bone, and a bruise over the left temple three or four inches long and two inches wide. The witness expressed the opinion that death was caused by a fracture of the skull and contusion of the brain resulting from a lick or blow, and that the laceration or incision could have caused the fracture at the base of the skull; that is, that the laceration could have produced death. There is other evidence which would sustain the conclusion that death resulted from the wound on the left temple.

It is evident that neither of these wounds was inflicted by Turnage. There is evidence that both the defendant and Randolph Davis struck the deceased. James Williams testified that the wound on the left temple was inflicted by the defendant with a truck round; the defendant said that he did not use the round, but that Randolph Davis used it. The evidence would have warranted the jury in finding that the defendant made the wound on the left temple; that Randolph Davis made the other, and that the latter, and not the former, was mortal. That the defendant and Davis acted in concert or that the two wounds were simultaneous is

not a necessary deduction from the evidence. It is in these circumstances that the defendant excepted to the following instructions:

"Now, gentlemen, it is competent for the defendant to testify that somebody else actually did the killing or struck the blow from which the deceased died, in order to exonerate himself, if he can, and if the jury accepts his statement, "because if he never struck at all, somebody else did strike the blow which killed the deceased, then the defendant could not be guilty."

"Now, you are not trying Randolph Davis, you are trying the defendant, but as I say, if the evidence satisfies you that Randolph Davis is the man who struck the blow that killed the deceased, then you would have to find that the defendant was not guilty, if you believe the defendant himself did not strike."

The instructions, as they appear in the record, are susceptible of the construction that if Randolph Davis inflicted a mortal wound on the right side of the head and the defendant inflicted another wound which was not mortal, the defendant would be guilty merely because he struck the deceased, although there was no concert of action between them, and although there may have been an interval between the two blows. For this reason the defendant is entitled to a new trial.

New trial.